

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed July 10, 2018**

_____
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § § | (Jointly Administered Under Case No. 18-30264-SGJ-11) |
| | § | |
| Debtors. | § § | Chapter 11 |
| | § | |
| ROBIN PHELAN, Chapter 11 Trustee, | § § | |
| Plaintiff, | § § | |
| vs. | § § | |
| | § | Adversary No. 18-03212-SGJ |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLO FUNDING, LTD. f/k/a ACIS LOAN FUNDING, LTD., CLO HOLDCO, LTD., NEUTRA, LTD., ACIS CLO 2014-3 LTD., ACIS CLO 2014-4 LTD., ACIS CLO 2014-5 LTD., ACIS CLO 2015-6 LTD., ACIS CLO 2014-3 LLC, ACIS CLO 2014-4 LLC, ACIS CLO 2014-5 LLC, and ACIS CLO 2015-6 LLC, | § § § § § § § § § § | |
| Defendants. | § | |

**PRELIMINARY INJUNCTION ORDER**

Upon the *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* [Adversary No. 18-03212, Docket No. 1] *(*the "Complaint")[1] filed by Robin Phelan, the Chapter 11 Trustee (the "Trustee") for Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP", with Acis LP, "Debtors"); and the Court having jurisdiction over this matter pursuant 28 U.S.C. §§ 157 and 1334; and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Complaint constituting a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O); and the substantive law being 11 U.S.C. §§ 105, 362, and 363; and it appearing that there was good and sufficient notice of the Trustee's Application for Preliminary Injunction ("Application"); and upon the record of the July 6, 2018 hearing on the Application (the "Hearing"); and upon the Trustee's verification of the Complaint; and pursuant to Federal Rule of Civil Procedure 65, incorporated by Federal Rule of Bankruptcy Procedure 7065, the Court finds that there is compelling evidence that irreparable harm is imminent to the Debtors, the Debtors' estates, the Debtors' rights, the Debtors' creditors, and to interested third parties (collectively the "Parties"), and if the Court does not issue a preliminary injunction enjoining the actions described herein, the Parties will be irreparably injured. All objections to the Trustee's Application are hereby overruled. As the basis for this order, the Court states the following:

1. The Chapter 11 Debtor, Acis LP—which is affiliated with the large investment advisor firm Highland Capital Management, L.P. ("Highland")—is a company that, for several years, has been engaged in the business of managing investments for special purpose entities that hold collateralized loan obligations ("CLOs"). Acis LP is currently the portfolio manager for,

---

[1] Capitalized term(s) not expressly defined herein shall have the same meaning(s) as such term(s) have in the Complaint.

**PRELIMINARY INJUNCTION ORDER** 2

*inter alia*, funds of the following CLOs: (i) Acis CLO 2013-1 Ltd. ("CLO-1"), (ii) Acis CLO 2014-3 Ltd. ("CLO-3"), (iii) Acis CLO 2014-4 Ltd. ("CLO-4"), (iv) Acis CLO 2014-5 Ltd. ("CLO-5"), and (v) Acis CLO 2015-6 Ltd. ("CLO-6" and together with CLO-1, CLO-3, CLO-4, and CLO-5, the "Issuers" or the "Acis CLOs"). As relevant herein, Acis LP manages the Acis CLOs through five portfolio management agreements ("PMAs").[2] Acis LP generates revenue primarily through the management of the Acis CLOs via the PMAs. True and correct copies of the PMAs were submitted into evidence at the Hearing (Trustee's Exhibits B-F). The Acis CLOs are subject to: (i) that certain Indenture, dated as of March 18, 2013, by and among CLO-1, as Issuer, Acis CLO 2013-1 LLC, as Co-Issuer and U.S. Bank National Association ("US Bank"); (ii) that certain Indenture, dated as of February 25, 2014, by and among CLO-3, as Issuer, Acis CLO 2014-3 LLC, as Co-Issuer and U.S. Bank, as Indenture Trustee (the "CLO-3 Indenture"); (iii) that certain Indenture, dated as of June 5, 2014, by and among CLO-4, as Issuer, Acis CLO 2014-4 LLC, as Co-Issuer and US Bank, as Indenture Trustee (the "CLO-4 Indenture"); (iv) that certain Indenture, dated as of November 18, 2014, by and among CLO-5, as Issuer, Acis CLO 2014-5 LLC, as Co-Issuer and US Bank, as Indenture Trustee (the "CLO-5 Indenture"); and (v) that certain Indenture, dated as of April 16, 2015, by and among CLO-6, as Issuer, Acis CLO 2015-6 LLC, as Co-Issuer and US Bank, as Indenture Trustee (the "CLO-6 Indenture"). The CLO-1 Indenture, CLO-3 Indenture, CLO-4 Indenture, CLO-5 Indenture, and CLO-6 Indenture are collectively referred to herein as the "Indentures." True and correct copies of the Indentures were submitted into evidence (Trustee's Exhibits G-K).

---

[2] The PMAs include: (i) that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013 (the "CLO-1 PMA"); (ii) that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014 (the "CLO-3 PMA"); (iii) that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014 (the "CLO-4 PMA"); (iv) that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014 (the "CLO-5 PMA"); and (v) that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015 (the "CLO-6 PMA"). The CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "PMAs."

**PRELIMINARY INJUNCTION ORDER**     **3**

2.Highland CLO Funding, Ltd. f/k/a/ Acis Loan Funding Ltd. ("HCLOF" or "ALF") has had, in recent months, a significant role with regard to Acis LP, and the PMAs, and the whole "CLO ecosystem"—as the parties in this bankruptcy case have been known to call the structure of the Acis LP CLO business. ALF apparently was originally created, in large part, to comply with certain risk-retention requirements of federal law relating to CLOs. ALF has been the holder of the equity in the Acis CLOs (which "equity" is actually in the form of subordinated notes, and is the bottom traunch of the capital structure of the Acis CLOs—i.e., the last investor to get paid upon a liquidation of the Acis CLOs).  Notably, persons connected with Highland began implementing transactions that changed the Acis LP "CLO ecosystem" and impaired Acis LP's contractual rights, almost immediately after October 20, 2017—the date that an individual named Joshua Terry obtained a multi-million arbitration award against Acis LP.  For example, prior to October 24, 2017, Acis LP had a small ownership interest in ALF.  Acis LP (being controlled at that time by the same persons that control Highland) decided to sell its interest in ALF back to ALF on or around October 24, 2017

3.Prior to October 27, 2017, Acis LP—not ALF—had authority to direct and effectuate an optional redemption under the PMAs. Acis LP had this authority pursuant to another Portfolio Management Agreement by and between Acis LP and ALF, dated December 22, 2016 (the "ALF PMA").  A true and correct copy of the ALF PMA was submitted into evidence (Trustee's Exhibit L). The ALF PMA provided broad authority to Acis LP as the portfolio manager of ALF. Section 5 of the ALF PMA set out Acis LP's authority, which included authority for and in the name of ALF to:

> (i) invest, directly or indirectly . . . in all types of securities and other financial instruments of United States and non-U.S. entities . . . including without limitation . . . notes representing tranches of debt ('CLO Notes') issued by a special purpose vehicle which issues notes backed by a pool of collateral consisting primarily of loans (which

>may be represented by a debt or equity security) (a 'CLO') . . . (each of such items, 'Financial Instruments'), (ii) provide credit and market research and analysis in connection with the investments and ongoing management of [ALF] and direct the formulation of investment policies and strategies for [ALF] . . . ; (iii) cause [ALF] to engage in . . . agency, agency cross, related party principal transactions with affiliates of [Acis LP] . . . ; and (iv) vote Financial Instruments, participate in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters.

*See* ALF PMA § 5(a)-(q).

4. While ALF did not have authority to terminate the ALF PMA, *Acis LP* could terminate the ALF PMA without cause upon at least ninety (90) days' notice. *See* ALF PMA § 13(a)-(c). Still, the ALF PMA provided for the removal of Acis LP as portfolio manager "for cause." *See* ALF PMA § 14(a)-(e).

5. Significantly, on October 27, 2017, *just seven days after Joshua Terry's arbitration award, Acis LP effectively terminated its own portfolio management rights under the ALF PMA and transferred its authority and those valuable portfolio management rights— for no apparent value—to Highland HCF Advisors, Ltd. ("Highland HCF").*

6. This transfer of Acis LP's portfolio management rights to Highland HCF was accomplished by way of a new Portfolio Management Agreement entered into by ALF and Highland HCF on October 27, 2017 (the "October 2017 PMA"), which cancelled and terminated the ALF PMA and empowered Highland HCF with the same broad authority to direct the management of ALF as was previously held by Acis LP under the ALF PMA (the "ALF PMA Transfer"). *See* October 2017 PMA §§ 1 & 5(a)-(q).

7. Under the prior ALF PMA, Acis LP's consent to the termination of the ALF PMA was required in order to effectuate the ALF PMA Transfer. Nevertheless, just days after the Joshua Terry multimillion dollar arbitration award was issued, the persons controlling Acis LP (and Highland), without expressing the basis for reasonable business judgment for this transfer,

simply directed Acis LP to sign the October 2017 PMA, consenting and agreeing to Acis LP's removal and replacement, and transferring all authority and management rights as portfolio manager of ALF to Highland HCF under the October 2017 PMA. *It appears to the Court that, without this ALF PMA Transfer, which transferred Acis LP's rights under the ALF PMA to Highland HCF, ALF—which changed its name in late October 2017 to Highland CLO Funding Ltd.—could not have attempted to direct and effectuate an optional redemption, which it is now attempting to do.*

8.    On April 30, 2018, HCLOF sent five notices purportedly requesting optional redemption pursuant to the Section 9.2 of each of the Indentures (the "First Optional Redemption Notices")—which essentially ordered a liquidation of the Acis CLOs, which among other things, would have rendered valueless the Acis PMA and Acis LP's value. Those notices were later withdrawn, after resistance from the Trustee and Court intervention.

9.    Later, on June 15, 2018, after HCLOF withdrew the First Optional Redemption Notices, HCLOF gave notice to the Trustee that it was again requesting an Optional Redemption pursuant to the Section 9.2 of each of the Indentures (the "Second Optional Redemption Notices"). Apparently, HCLOF has now withdrawn the Second Optional Redemption Notices. However, the Trustee seeks a preliminary injunction preventing further attempts by HCLOF at effectuating Optional Redemptions while the Trustee attempts to confirm a plan or otherwise resolve the Acis LP bankruptcy case in a way beneficial to creditors and interest holders. "Optional Redemption" is defined by and effectuated pursuant to Sections 9.2 of each of the Indentures. For the avoidance of doubt, Optional Redemption as used herein refers to an Optional Redemption previously or currently issued by HCLOF or any of the Defendants (as

hereinafter defined) or any other attempt to liquidate the Acis CLOs now or in the future by any means.

10. The Trustee has sustained his heavy burden of entitlement to a preliminary injunction in this Adversary Proceeding. First, absent affirmative relief from the automatic stay, any action to effectuate an Optional Redemption by way of any Optional Redemption notices violates the automatic stay of the Acis LP bankruptcy case because it represents an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Further, any action taken by the Defendants to effectuate an Optional Redemption is outside the ordinary course of Acis LP's business, and therefore requires bankruptcy court approval. Acis LP's rights under the PMAs are valuable, and if Acis LP were to lose such rights, immediate and irreparable harm would result to Acis LP's creditors and third parties with financial interests in the Acis LP's bankruptcy estates because confirmation of a plan of reorganization funded by Oaktree Capital Management, L.P. ("Oaktree") pursuant to the Oaktree Transaction (as defined and explained by the *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Case No. 18-30264, Docket No. 263] (the "Break-Up Fee Motion")—or, perhaps, any other viable transaction—would be impossible. In addition to the Oaktree Transaction, the Trustee credibly testified that he has received expressions of interests from other qualified parties to fund alternative plans of reorganization for Acis LP, which may include a reset of the CLOs and continuance of Acis LP as the portfolio manager of the CLOs. Finally, HCLOF is using rights that appear to have been fraudulently transferred from Acis LP (i.e., rights under the ALF PMA) to attempt to effectuate the Optional Redemptions.

11. To obtain a preliminary injunction, the movant must show that (a) it has a substantial likelihood of prevailing on the merits; (b) it will suffer irreparable injury without the injunction; (c) the threatened injury to the movant outweighs the damage the proposed injunction may cause to the parties opposing it; and (d) the requested injunction would not be against the public interest. *Clark v. Pritchard*, 812 F.2d 991, 993 (5th Cir. 1987); *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F.Supp. 3d 604, 635 (M.D. La. 2015); *Miranda v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2217-L, 2013 U.S. Dist. LEXIS 90632 (N.D. Tex. June 27, 2013). The Court must necessarily make its decision by relying on an early and abbreviated proceeding and set of facts. *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). Quick and abbreviated determinations are necessary to recognize the goal of injunctive relief, which is to maintain the status quo to permit the court the time necessary to make a decision on the merits after full development of the facts. *Kliebert*, 141 F. Supp. 3d at 635. Moreover, not all of the four (4) factors must be given equal weight. According to the Fifth Circuit Court of Appeals: "a sliding scale must be applied in considering the probability of plaintiffs' winning on the merits and plaintiffs' irreparable injury in the absence of interlocutory relief…." (*Siff v. State Democratic Executive Committee*, 500 F.2d 1307, 1309 (5th Cir. 1974)) and "…none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Texas v. Seatrain Int'l, S.*A., 518 F.2d 175, 179-180 (5th Cir. 1975). This means that as long as the court finds that there is some likelihood of ultimate success (i.e., not zero likelihood of success), the court can give greater weight to the severity and irreparability of the harm and the relative hardships to the movant and opponent of the injunctive relief. *Id.*

12. The Trustee has shown that the elements warranting a preliminary injunction exist here: (1) the Trustee has a "substantial likelihood of success on the merits" of a claim regarding (i) violation of the automatic stay if injunction is not granted, (ii) utilizing rights transferred for no or insufficient value to attempt to effectuate an optional redemption, (iii) failing to obtain court authority under Section 363 to effectuate an optional redemption, and (iv) confirmation of an effective plan of reorganization; (2) creditors and interested third-parties face a substantial threat of imminent and irreparable injury to their interests in the Debtors' bankruptcy estates if an injunction is not issued since confirmation of a plan of reorganization funded by Oaktree or other competent party will be eliminated; (3) the threatened injury to interested parties "if the injunction is denied outweighs any harm that will result if the injunction is granted"; and (4) "public interest" favors letting the Trustee exercise his fiduciary duties and effectuate his process over costly litigation. *See Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009) (stating the elements of a preliminary injunction).

13. As earlier noted, the Optional Redemption Notices essentially demand the liquidation of property currently under the control of Acis LP, as portfolio manager, and, in effect, the PMAs themselves, which are defined as Assets under the Indentures and are property of the Acis LP estate. Indeed, the main, if not sole, purpose of the redemptions appears to be to remove Acis LP as portfolio manager and terminate its primary asset, the PMAs. Accordingly, by extinguishing the PMAs, a purported Optional Redemption in this context should be deemed prohibited because it would represent an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3). The Debtors' rights under the PMAs, which are executory contracts, are property of the estate. The Debtors' rights under the PMAs are therefore protected by the

automatic stay. *In re Mirant Corp.*, 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("a debtor has rights under the contract which are property of the estate and so are protected by the automatic stay from actions of other parties"). If the Optional Redemption or other liquidation of the assets in the Acis CLOs is permitted to go forward, it would render the PMAs valueless. Consequently, the Optional Redemption and any other attempt by HCLOF to liquidate the assets of the Acis CLOs would violate Section 362(a)(3) because such actions involve exercising control over property of the estate (the PMAs). Thus, because the liquidation of the CLOs represents an "act to obtain possession of property of the estate,"—namely, Acis LP's intangible property rights in the PMAs—such actions constitute a violation of Section 362(a)(3).

14.    Injunctive relief is necessary here to prevent imminent and irreparable injury in the form of substantial losses to creditors and parties-in-interest, as well as to third parties' financial interests, related to the Optional Redemption, call, or other liquidation of the Acis CLOs. The losses that would result in the event an injunction is not issued cannot be presently measured by any certain pecuniary standard, are not reasonably quantifiable, and cannot be adequately compensated with monetary damages; thus, creditors and interested third parties otherwise would have no adequate remedy at law. The Optional Redemption would eliminate any chance of confirmation of a plan of reorganization based on the Oaktree Transaction, or a similar plan. HCLOF has not shown that the safe harbor of Section 555 of the Bankruptcy Code applies to its actions to effectuate the Optional Redemption.

15.    The balancing of the harms weighs in favor of issuing a preliminary injunction because any alleged harm to HCLOF, Highland, or any of the Highland Affiliates,[3] is substantially outweighed by the damage that would be caused to all parties-in-interest if the

---

[3] The Highland Affiliates include: HCLOF, CLO Holdco, Ltd. ("Holdco"), and Neutra, Ltd. ("Neutra," and together with HCLOF, and Holdco, the "Highland Affiliates"),

Court does not enjoin the Optional Redemption, call, or other liquidation of the Acis CLOs, and return more to all affected parties than would be received by the Optional Redemption. Any alleged harm to Defendants is illusory and specious because, among other things, the Defendants have options available that immediately mitigate any purported damage. Namely, Defendants could (1) authorize a "refinance" or "reset" transaction or (2) sell their equity to a third party in an amount that exceeds what they would receive in an Optional Redemption. There seems to the Court to be a highly meaningful chance that HCLOF, Highland and the Highland Affiliates will receive the same or more monetary benefit from the Oaktree Transaction than they would from an Optional Redemption, and creditors will likely be paid in full. HCLOF's claimed harm is exaggerated.

16.     Public policy supports restraining the actions described herein to allow the Trustee to exercise his fiduciary duties to maximize the value of the estate for the benefit of creditors by allowing the Trustee to direct and control the refinancing, sale, or other monetization of Debtors' property and other assets. Further, there is a public interest in allowing for a Chapter 11 process, rather than costly prolonged litigation.

17.     Accordingly, the Court issues this preliminary injunction preventing the Defendants from taking any action in furtherance of any Optional Redemption. Any notices of optional redemption sent by HCOLF would be an attempt to obtain a property right (the right to control trading of the loans in the CLOs) from Acis LP as well as an attempt to exercise control over contractual property rights of Acis LP, all in violation of Section 362(a)(3) of the Bankruptcy Code.

18.     The Parties will suffer immediate and irreparable harm in the form of substantial losses to the Parties and third parties' financial interests if the Trustee, Highland, CLO-1, CLO-3,

CLO-4, CLO-5, CLO-6, Acis CLO 2013-1 LLC ("<u>CLO-1 LLC</u>"), Acis CLO 2014-3 LLC ("<u>CLO-3 LLC</u>"), Acis CLO 2014-4 LLC ("<u>CLO-4 LLC</u>"), Acis CLO 2014-5 LLC ("<u>CLO-5 LLC</u>"), and Acis CLO 2015-6 LLC ("<u>CLO-6 LLC</u>," and together with CLO-1 LLC, CLO-3 LLC, CLO-4 LLC, CLO-5 LLC, the "<u>Co-Issuers</u>"), and other parties (the Trustee, Highland, HCLOF, the Issuers, and the Co-Issuers are referred to herein as the "<u>Defendants</u>") are not immediately restrained and enjoined from effectuating the Optional Redemption, call, or other liquidation of the Acis CLOs. The Optional Redemption, call, or other liquidation of the Acis CLOs threatens to liquidate or harm valuable property of the Debtors, the Debtors' rights, the Debtors' estates, and other assets in this matter, to the detriment of the Parties.

19. Injunctive relief is necessary to prevent imminent and irreparable injury to the Parties in the form of substantial losses to the Parties and third parties' financial interests related to the Optional Redemption, call, or other liquidation of the Acis CLOs and the threatened liquidation of valuable property of the Debtors, the Debtors' rights, the Debtors' estates, and other assets in this matter. The losses that would result in the event a preliminary injunction order is not issued cannot be presently measured by any certain pecuniary standard, are not reasonably quantifiable, and cannot be adequately compensated with monetary damages; thus, the Parties and interested third parties otherwise have no adequate remedy at law.

20. The Trustee has a "substantial likelihood of success on the merits" of a claim regarding: (i) violation of the automatic stay if this temporary restraining order is not issued, (ii) failing to obtain court authority under Section 363 to effectuate an optional redemption, and (iii) confirmation of an effective plan of reorganization.

21. The balancing of the harms weighs in favor of issuing the temporary injunction because any harm to Highland, or any of the Highland Affiliates, is substantially outweighed by

the damage that would be caused to Parties if the Optional Redemption, call, or other liquidation of the Acis CLOs is not enjoined.

22. Public policy supports restraining the actions described herein and allowing the Trustee to exercise his fiduciary duties to maximize the value of the estate for the benefit of the Parties by allowing the Trustee to direct and control the refinancing, sale, or other monetization of Debtors' property, the Debtors' rights, the Debtors' estates, and other assets in this matter.

**IT IS THEREFORE ORDERED** that for the reasons stated herein and pursuant to Federal Rule of Civil Procedure 65, made applicable herein by Federal Rule of Bankruptcy Procedure Rule 7065 and pursuant to Federal Rule of Bankruptcy Procedure Rule 7001(7) the Court finds the Trustee is entitled to a preliminary injunction, that all Defendants and their officers, agents, servants, employees, attorneys, and any other person or entity acting on the Defendants' behalf are enjoined from:

a. proceeding with, effectuating, or otherwise taking any action in furtherance of any Optional Redemption, call, or other liquidation of the Acis CLOs previously or currently issued by the Defendants and any other attempt to liquidate the Acis CLOs now or in the future by any means;

b. trading any Acis CLO collateral, whether in furtherance of the Optional Redemption, call, or other liquidation of the Acis CLOs or otherwise, without the express and explicit written authorization of the Trustee; and

c. sending, mailing, or otherwise distributing any notice to the holders of the Acis CLOs in connection with the effectuation of any Optional Redemption, call, or other liquidation of the Acis CLOs.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Bankruptcy Procedure 7065, the Trustee is not required to provide security or bond in connection with this Order.

**IT IS FURTHER ORDERED** for the avoidance of doubt, that U.S. Bank, as Indenture Trustee, may perform its ministerial functions in respect of sale trades executed at the initiation of the Issuers or Highland Affiliates prior to July 9, 2018.

**IT IS FURTHER ORDERED** that this Order expires upon confirmation of any plan of reorganization or conversion of the Bankruptcy Cases unless further extended by the Court or by the agreement of the parties, or until such time as the Defendants seek Court approval to dissolve this Order or until such time as the Defendants seek and are granted relief from the automatic stay pursuant Section 362 of the Bankruptcy Code.

### END OF ORDER ###

Submitted by:

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

By:*/s/ Rakhee V. Patel*
Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com

**SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11 TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com
**COUNSEL FOR**
**THE CHAPTER 11 TRUSTEE**