Mark M. Maloney (GA 468104) (admitted *pro hac vice*)
W. Austin Jowers (GA 405482) (admitted *pro hac vice*)
Paul R. Bessette (TX 02263050)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404.572.4600
Fax: 404.572.5100
mmaloney@kslaw.com

COUNSEL FOR HIGHLAND CLO FUNDING LTD.

Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
Melina N. Bales (TX 24106851)
FOLEY GARDERE
FOLEY & LARDNER LLP
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
Ben A. Barnes (TX 24092085)
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Tel: 214.981.3800
Fax: 214.981.3839
mhurst@lynnllp.com

COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT LP

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 18-30264-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, LP, and | § | Case No. 18-30265-SGJ-11 |
| | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly administered under |
| | § | Case No. 18-30264-SGJ-11) |
| Debtors. | § | |
| | § | Chapter 11 |
| | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT LP, et al., | § § § | |
| vs. | § § | Adv. No. 18-03078-SGJ |
| ROBIN PHELAN, Chapter 11 Trustee. | § | |

| | | |
|---|---|---|
| ROBIN PHELAN, Chapter 11 Trustee. | § § | |
| vs. | § § | Adv. No. 18-03212-SGJ |
| HIGHLAND CAPITAL MANAGEMENT LP, et al., | § § | |

# MOTION FOR LEAVE TO APPEAL

## Doc. 21 – No. 18-03212: Preliminary Injunction Order (entered July 10, 2018) (Notice of Appeal Appendix C)

# TABLE OF CONTENTS

FACTUAL BACKGROUND ....................................................................................2

    A.    The Debtors' Businesses And CLO Structure. ...........................2

    B.    The Oaktree Motion. ..................................................................7

    C.    The July 6, 2018 Hearing and the Bankruptcy Court's Orders. ........................................................................................9

GROUNDS FOR APPEAL ..................................................................................10

    I.    The Bankruptcy Court's Orders Are Immediately Appealable As Of Right. .......................................................................................10

        A.    The Orders Granting The Chapter 11 Trustee's Request For A Preliminary Injunction And Denying HCLOF's Request For A Preliminary Injunction Are Immediately Appealable. ...........................................................................10

        B.    The Break-Up Fee Order Is An Appealable Final Order..........12

    II.    If The Bankruptcy Court's Orders Are Not Immediately Appealable, This Court Should Certify Them For Interlocutory Appeal.................................................................................................13

# INDEX OF AUTHORITIES

<u>Cases</u>

*Chambers v. First United Bank & Tr. Co.*,
   No. 4:08-MC-007, 2008 WL 5141264 (E.D. Tex. Dec. 5, 2008)............................................ 13

*In re ASARCO, LLC*,
   650 F.3d 593 (5th Cir. 2011) ................................................................................ 11, 12, 13

*In re Brooks*,
   60 B.R. 155 (Bankr. N.D. Tex. 1986)........................................................................... 15

*In re Excel Innovations, Inc.*,
   502 F.3d 1086 (9th Cir. 2007) ..................................................................................... 11

*In re Funneman*,
   155 B.R. 197 (Bankr. S.D. Ill. 1993) ............................................................................ 14

*In re Gibralter Res., Inc.*,
   197 B.R. 246 (Bankr. N.D. Tex. 1996)......................................................................... 15

*In re Ichinose*,
   946 F.2d 1169 (5th Cir. 1991) ........................................................................... 10, 13, 14

*In re Ionosphere Clubs, Inc.*,
   139 B.R. 772 (S.D.N.Y. 1992).............................................................................. 11, 12

*In re Kizzee-Jordan*,
   626 F.3d 239 (5th Cir. 2010) ....................................................................................... 11

*In re McKinney*,
   610 F.3d 399 (7th Cir. 2010) ....................................................................................... 11

*In re Moix-McNutt*,
   215 B.R. 405 (8th Cir. BAP 1997) .............................................................................. 14

*In re Orr*,
   180 F.3d 656 (5th Cir. 1999) ....................................................................................... 11

*In re O'Connor*,
   258 F.3d 392 (5th Cir. 2001) ....................................................................................... 14

*In re Prof'l Ins. Mgmt.*,
   285 F.3d 268 (3d Cir. 2002) ....................................................................................... 11

*In re Reserve Prod., Inc.*,
   190 B.R. 287 (E.D. Tex. 1995)..................................................................................... 10

*In re Roussos*,
   No. 2:15-AP-01406-ER, 2016 WL 3545747 (C.D. Cal. June 27, 2016)................................. 10

*In re Royce Homes LP*,
   466 B.R. 81 (S.D. Tex. 2012) ...................................................................................... 11

*In re Teligent, Inc.*,
  307 B.R. 744 (Bankr. S.D.N.Y. 2004) .................................................................................. 16

*In re Treasure Isles HC, INc.*,
  462 B.R. 645 (6th Cir. BAP 2011) ...................................................................................... 14

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  491 B.R. 27 (S.D.N.Y. 2013) ............................................................................................... 17

*Loan Syndications and Trading Ass'n v. SEC*,
  882 F.3d 220 (D.C. Cir. 2018) ............................................................................................ 15

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*,
  716 F.3d 736 (3d Cir. 2013) ................................................................................................ 15

*NovaCare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)*,
  267 B.R. 46 (Bankr. D. Del. 2001) ..................................................................................... 14

*Scott v. Bierman*,
  429 F. App'x. 225 (4th Cir. 2011) ...................................................................................... 14

*TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*,
  764 F.3d 512 (5th Cir. 2014) .............................................................................................. 14

Statutes

11 U.S.C. § 362(a)(3) ................................................................................................... 6, 21

11 U.S.C. § 555 ................................................................................................................. 21

28 U.S.C. § 158(a) ................................................................................................. 10, 12, 14

28 U.S.C. § 158(a)(1) ........................................................................................................ 11

28 U.S.C. § 158(a)(3) ........................................................................................................ 15

28 U.S.C. § 1291 ............................................................................................................... 12

28 U.S.C. § 1292(a) .................................................................................................... 10, 11

28 U.S.C. § 1292(b) ............................................................................................. 15, 16, 17

**\* EXPEDITED TREATMENT REQUESTED \***

**MOTION FOR LEAVE TO APPEAL**

**Doc. 390 – No. 18-30264: Order Granting Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shares Services Provider, Oaktree Capital Management LP (entered July 10, 2018) (Appendix A).**

Highland CLO Funding, Ltd. ("HCLOF") and Highland Capital Management, LP ("Highland") seek an immediate appeal of three orders issued on July 10, 2018 by the bankruptcy court: (1) an order denying HCLOF's request for injunctive relief to prevent Chapter 11 Trustee Robin Phelan (the "Chapter 11 Trustee") from transferring HCLOF's property without HCLOF's consent, (2) an order granting injunctive relief requested by the Chapter 11 Trustee preventing HCLOF from exercising its rights as the rightful owner of that property; and (3) an order granting the Chapter 11 Trustee's motion for a break-up fee and expense reimbursement for Oaktree Capital Management, L.P. ("Oaktree"), premised on being able to transfer HCLOF's property to Oaktree without HCLOF's consent.

This Court's immediate intervention is needed because the bankruptcy court's orders raise grave constitutional concerns, including under basic separation-of-powers and takings principles. Each of the bankruptcy court's orders are necessarily premised on the unlawful conclusion that the Chapter 11 Trustee can force a transfer of property owned by a third party against that party's will. There is no authority in the Bankruptcy Code or anywhere else for a court to permit a trustee to seize control over property that does not belong to the debtor and then dispose of that property through the bankruptcy process. To the contrary, it is bedrock law that a bankruptcy court has no power to dispose of property that does not belong to the debtor and is not part of the debtor's estate. Because the bankruptcy court lacks that power and has no subject matter jurisdiction over non-estate property, it also lacks authority to saddle the debtor's estate

1

with a massive administrative expense claim that depends on the legitimacy of the premise that the Bankruptcy Code allows a trustee to force the sale of property not owned by the debtor.

If the bankruptcy court's orders are not promptly reversed, HCLOF and Highland will suffer irreparable harm, and the entire bankruptcy proceeding will be infected with reversible error.  For these reasons, HCLOF and Highland are filing a motion for expedited treatment and for an immediate stay pending appeal, so this Court has time to address the important issues raised in this appeal and restore order to this case before further and irreparable harm results.

The Court should immediately review the bankruptcy court's orders because they are final and appealable as a matter of right.  To avoid any doubt, HCLOF and Highland are simultaneously moving for leave to appeal.  The standards for permissive appeal are readily satisfied in the extreme circumstances of this case.

<b>FACTUAL BACKGROUND</b>

**A.      The Debtors' Businesses And CLO Structure.**

Debtors Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP", and with Acis LP, the "Debtors") were put into involuntary bankruptcy by a purported creditor and former employee, Joshua Terry after he procured an approximately $8 million arbitration award against the Debtors.[1]

The business of Acis LP is to serve as the portfolio manager of five Collateralized Loan Obligations ("CLOs") launched between 2012 and 2016, which collectively hold assets with a current aggregate value of approximately $2 billion (Acis GP's only asset is its equity interest in

---

[1] Mr. Terry was the only petitioning creditor to put the Debtors into bankruptcy and, to date, no other alleged creditors have filed any proofs of claims in the Debtors' bankruptcy cases.  In their schedules of creditors, which was recently amended by the Chapter 11 Trustee, only approximately $11.5 million of creditors were identified.  Highland was the second largest creditor besides Mr. Terry.

Acis LP). *See* ECF 319-1 at 121:3–7, <u>Exhibit 5</u>, APP. 000105.[2] Each CLO holds a portfolio of diversified syndicated leveraged commercial loans through the private placement of rated secured notes ("Secured Notes") and unsecured, subordinated, equity-like securities ("Equity Notes"), providing investors with differentiating risk and reward profiles. 2018-02-07 Hr'g Tr. 73:1–74:20, <u>Exhibit 9</u>, APP. 000673-000674. Each of the Secured and Equity Notes is issued pursuant to an Indenture, which establishes the rights of the noteholders and indenture investment criteria. Through the Indentures, the CLOs pledged various loan assets and other assets to the indenture trustee — US Bank National Association — as security for the Secured Notes issued by the CLOs.

The issuers of the CLOs engaged Acis LP as their portfolio manager. Through a Portfolio Management Agreement ("PMA") for each CLO, Acis LP agreed to manage the collateral securing the Secured and Equity Notes according to criteria specified in the respective indentures and pursuant to the requirements of the Investment Advisers Act of 1940. *See* ECF 319-7, <u>Exhibit 5</u>, APP. 000108-000172. Under the PMAs, Acis LP represented that it is, and will act as, an "Investment Adviser" within the meaning of the Investment Advisers Act of 1940. In return for its services, Acis LP earns management fees, which are specified percentages of the principal amount of total assets under management. Managing approximately $2 billion in assets, Acis LP's management fee equals about $8 million per year. The Debtors are "special purpose entities," typical in a CLO structure, and because Acis LP has no employees or infrastructure, it contracts with Highland to provide all necessary services under a Shared Services Agreement and a Sub-Advisory Agreement. Acis LP is contractually obligated to

---

[2] Unless otherwise noted, all ECF citations refer to documents filed in Case No. 18-30264-sgj. In addition, pursuant to District Court Local Rule 7.1(i), exhibits to this motion are included in an appendix filed contemporaneously herewith and identified by exhibit number and appendix page as "APP. __."

compensate Highland with about 90% of its revenue in exchange for performance of the front, middle, and back office services, leaving Acis LP with net annual revenue of approximately $800,000. *See, e.g.,* ECF 319-12 at Appx. A, <u>Exhibit 5</u>, APP. 000240-000241.

When they invested in the CLOs, investors were informed that Highland would perform all of the portfolio management duties, and the CLOs and the Equity Noteholders have relied on that representation and the reputation of Highland in the industry to manage their investments since the inception of each of the CLOs. 2018-06-12 Status Conf. Tr. 36:25–38:25, <u>Exhibit 12</u>, APP. 001154-001156; <u>Exhibit 14</u>, APP. 001550-001551 ("Investment Objective"). Under the PMAs, any proposal to change the sub-servicer away from Highland requires the consent of various parties, including a majority of the holders of the Equity Notes.

HCLOF earns income when the amount of money paid in interest by the borrowers on the underlying loan asset investments exceeds the fixed amount the CLOs must pay the Secured Noteholders. When those interest rates rise or fall, the distribution of money within the CLO may become misaligned with prevailing market rates. When that happens, the Equity Noteholders, including HCLOF, receive a lesser return on their investment than they should under prevailing market conditions. 2018-02-06 Hr'g Tr. 73:22–74:1, <u>Exhibit 8</u>, APP. 000389-000390. That is the situation that now exists. Because interest rates for the types of loans owned by the CLOs have fallen since the CLOs were created in 2012 through 2016, the five CLOs are losing money for HCLOF compared to a similar vehicle that offers a market-appropriate rate of return. 2018-03-23 Hr'g Tr. 28:18–29:25, <u>Exhibit 10</u>, APP. 001009-001010. To address this type of situation, HCLOF has the contractual right under the Indentures to "reset" the CLO, which is a process of refinancing currently existing collateral loan obligations to pay lower interest rates to the CLOs' Secured Noteholders and maintain or improve the yield to the Equity Noteholders. 2018-02-06 Hr'g Tr. 73:22–75:1, <u>Exhibit 8</u>, APP 000389-000391.

HCLOF's efforts to reset the CLOs were thwarted by the filing of the involuntary bankruptcy petitions. HCLOF now remains stuck in subpar investments, losing approximately $59,000 per CLO per week — a total of approximately $295,000 per week in the aggregate across the five CLOs — compared to what it could earn by effecting a reset of the CLOs. 2018-06-12 Status Conf. Tr. 34:14-24, Exhibit 12, APP. 001152; 2018-07-06 Hr'g Tr. 136:20-24, Exhibit 13, APP. 001389. Under these circumstances, HCLOF determined that a redemption, effected by Highland as the sub-manager for Acis LP, was its sole remedy. Under the Indentures, the Secured Notes can be redeemed under certain conditions, generally at the written direction of 66 2/3% of the aggregate outstanding amount of the Equity Notes. Through this right of redemption, the Equity Noteholders can effectively windup the CLOs and have Highland redeploy their funds into other investments, at their discretion, when the CLOs no longer meet the Equity Noteholders' investment objectives. This type of structure is typical for CLOs. Acis LP is not a party to the Indenture where the contractual right of redemption exists; however, it must comply with certain aspects of the Indenture in its capacity as the CLOs' portfolio manager.

On April 30, 2018, HCLOF instructed the Indenture Trustee and Acis LP[3] to sell the CLOs' assets through the optional redemption process provided for in the Indentures (the "Initial Notices"), which was a 45-day process to be effectuated by June 14, 2018. On May 24, 2018, the Issuers of the CLOs issued the "Issuer" Notices of Redemption. *See* ECF 319-13, Exhibit 5, APP. 000246-000272.

The notices were then provided to the Chapter 11 Trustee, who stated his intent to refuse to authorize Highland, as sub-manager, to effectuate the redemptions of the CLOs and return

---

[3] After the bankruptcy court entered Chapter 7 orders for relief on April 13, 2018, a Chapter 7 Trustee was appointed for the Debtors. The bankruptcy court then entered further orders converting the Debtors' cases to a Chapter 11 and a new Chapter 11 Trustee was appointed for both Debtors.

HCLOF's funds.   In response, on May 30, 2018, HCLOF and Highland filed an adversary proceeding seeking to compel the Chapter 11 Trustee to perform his obligations as portfolio manager to effectuate the redemptions and for declaratory relief.[4]   At a status conference the next day, on May 31, 2018, the Chapter 11 Trustee argued that the optional redemptions violated 11 U.S.C. § 362(a)(3).   At the conclusion of the May 31 hearing, the bankruptcy court *sua sponte* entered a temporary restraining order ("TRO").   The TRO restrained HCLOF, Highland, and other parties, for a period of 14 days, from:

- proceeding with, effectuating, or otherwise taking any action in furtherance of any Optional Redemption, call, or other liquidation of the Acis CLOs.

- sending, mailing, or otherwise distributing any notice to the holders of the Acis CLOs in connection with the effectuation of any Optional Redemption, call, or other liquidation of the Acis CLOs.

During the May 31 hearing, the Chapter 11 Trustee presented the concept of a proposed transaction with a then-undisclosed party (now revealed to be Oaktree), that he claimed would enable all of the Debtors' creditors to be paid in full and pay "Highland equity" more than it would receive in the redemption.   2018-05-31 Status Conf. Tr. 7:20–11:13, Exhibit 11, APP. 001044-001048.  On June 13, 2018, for a variety of reasons, including that it was not possible for the redemption to be effectuated by June 14, HCLOF withdrew the Initial Notices, and on June 15, 2018 at 12:01 a.m., the TRO expired.  In order to restart the redemption process, and in light of changed circumstances, on June 15, 2018, HCLOF issued new Notices of Redemption with a new redemption date of July 30, 2018, in the manner required by the Indentures.  In response to an *ex parte* motion filed by the Chapter 11 Trustee, the bankruptcy court issued a new TRO to

---

[4] *See* Case No. 18-03078-sgj.  HCLOF and Highland requested expedited consideration of their Motion to Withdraw the reference on this adversary proceeding and despite the passage of almost a month and a half since that motion was filed, the bankruptcy court has not issued the Report and Recommendation to the District Court as required by Local Bankruptcy Rule 5011.

once again halt the redemption process from being effectuated, with an expiration date and time of 12:01 pm CDT on July 9, 2018. On July 6, 2018, HCLOF withdrew its previously issued Notices of Redemption. A hearing before the bankruptcy court also occurred on July 6, resulting in the three orders that are the subject of this appeal.

**B.    The Oaktree Motion.**

On June 8, 2018, the Chapter 11 Trustee filed an emergency motion to approve a break-up fee and expense reimbursement in connection with the proposed transaction (the "Oaktree motion"). The transaction is premised on Oaktree paying a purchase price to the Debtors' estate for, and ultimately receiving a transfer of, the Equity Notes owned by HCLOF. The emergency motion also sought to ***immediately*** replace Highland, the sub-advisory and shared services provider, with Oaktree even before approval of the proposed transaction. *See* ECF 263, Exhibit 4, APP. 000030-000071.

There is no dispute that Acis LP does not own or have any property interest in HCLOF's Equity Notes. Nonetheless, the Chapter 11 Trustee has now filed a plan under which HCLOF's Equity Notes would be transferred to Oaktree without HCLOF's consent. Moreover, Oaktree would replace Highland in providing services to Acis LP, pending that transfer. To support this deal, the Chapter 11 Trustee requested that the bankruptcy court approve a break-up fee to Oaktree totaling $2.5 million. Because the proposed Oaktree transaction would yield, at most, only $9.6 million to the Debtors' estates, the break-up fee is over 25% of the value to the Debtors' estates. Moreover, the break-up fee would be payable to Oaktree if the transaction (including the unprecedented forced transfer of HCLOF's property) does not ultimately close.

HCLOF and Highland objected to the Oaktree motion. *See* ECF 364, Exhibit 6, APP. 000273-000291; ECF 366, Exhibit 7, APP. 000297-000312. Because the underlying transaction amounts to nothing short of an unlawful taking and conversion of what is undisputedly HCLOF's

property, there was no justification for awarding Oaktree the break-up fee and expense reimbursement and replacing Highland with Oaktree as sub-servicer and sub-advisor. The Oaktree Order is also improper to the extent it requires that Oaktree replace Highland as sub-servicer and sub-adviser. The Oaktree Order ignores the terms of the Portfolio Management Agreements between Acis and the Issuers. Certain conditions must exist before Acis can delegate its obligations to Oaktree, as it has to Highland. Before delegating its obligations, Acis must obtain written consent of each Issuer, a majority of the Equity Noteholders, and a majority of the "Controlling Class." *E.g.* PMA § 14(a); *see* ECF 319-7, Exhibit 5, APP. 000130. It also must satisfy the "Global Rating Condition," to ensure that the assignment does not cause the applicable funds' creditworthiness ratings to change. *Id.* The Trustee presented no evidence that he satisfied any of these conditions, yet the bankruptcy court ordered — relying, generically, on 11 U.S.C. §§ 363, 365, and 105 — that Oaktree replace Highland as Acis's service provider and assume Highland's responsibilities under the Shared Services Agreement and the Sub-Advisory Agreement. *See* ECF 319-11, Exhibit 5, APP. 000173-000224; 319-12, Exhibit 5, APP. 000225-000245. If Highland complies with this aspect of the Oaktree motion, Highland must undertake the onerous process of transitioning its advisory, operational, and regulatory responsibilities to Oaktree. This process would cause a substantial burden that Highland and HCLOF should not have to bear should this Court ultimately reverse the Oaktree Order.

In addition, the bankruptcy court's order on the Oaktree Motion "replace[s] Highland [with Oaktree] as the provider of the sub-advisory services and shared services." ECF 390, Exhibit 1, APP. 00002. Replacing Highland with Oaktree frustrates the investment objectives of HCLOF and its investors and denies them the benefit of their bargain. Highland is, and has always been, the portfolio manager for each of the CLOs. *See, e.g.*, Offering Mem. at 94-98 (section entitled "Portfolio Manager" describing Highland's capabilities and qualification of

Highland personnel), ECF 364-3, <u>Exhibit 6</u>, APP. 000292-000296. Acis LP had no operations and sub-contracted all of its duties to Highland, which has historically provided all of the services, employees, and expertise to actually manage the CLOs. *See id.* at 94. Highland's involvement was clearly part of the investment objectives of the Equity Note holders, as reflected in the offering memoranda, each of which clearly show the expectation that Highland would provide all the services of a portfolio manager for the entire duration of the CLOs. *See, e.g., id.* at 94–98. HCLOF will suffer immediate and substantive harm in losing the investment manager on which it has relied since the inception of the CLOs. Highland will incur substantial harm as a result of the extraordinary financial, administrative, and operational resources it must expend to comply with the bankruptcy court's order that Oaktree take its place as sub-servicer and sub-adviser.

**C.    The July 6, 2018 Hearing and the Bankruptcy Court's Orders.**

At the July 6 hearing, both the Chapter 11 Trustee and a representative for Oaktree testified and acknowledged that the Equity Notes were not property of the estate. *See* 2018-07-06 Hr'g Tr. 54:10–12, 119:12–14, <u>Exhibit 13</u>, APP. 0001307, APP. 001372.

Despite this testimony, and despite the fact that no authority of any kind was cited by any party in which an involuntary transfer of non-debtor property had ever been compelled, on July 10 the bankruptcy court entered three orders that facilitate the Oaktree transaction proceeding forward. *First*, the court denied HCLOF's motion for preliminary injunction to prevent the Chapter 11 Trustee from continuing his efforts to effect a forced sale of HCLOF's Equity Notes without HCLOF's consent. *Second*, the court granted the Chapter 11 Trustee's motion for preliminary injunction thereby preventing HCLOF from exercising its redemption rights under the Equity Notes. *Third*, the court granted the Chapter 11 Trustee's motion to incur the expense reimbursement and break-up fee for Oaktree as an administrative expense and to immediately

appoint Oaktree as sub-servicer in Highland's place. That order permits the Chapter 11 Trustee to continue to pursue the unlawful transfer of HCLOF's Equity Notes to Oaktree.

## GROUNDS FOR APPEAL

### I. The Bankruptcy Court's Orders Are Immediately Appealable As Of Right.

The bankruptcy court's order granting the Chapter 11 Trustee's request for injunctive relief, its order denying HCLOF's request for an injunction, and its order approving the Oaktree motion are immediately appealable as a matter of right.

### A. The Orders Granting The Chapter 11 Trustee's Request For A Preliminary Injunction And Denying HCLOF's Request For A Preliminary Injunction Are Immediately Appealable.

This Court has appellate jurisdiction over all final orders and certain interlocutory orders of the bankruptcy court. *See* 28 U.S.C. § 158(a). District courts often look to 28 U.S.C. § 1292 for guidance in construing § 158(a). *See In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991).

Section 1292(a)(1) grants an automatic right to appeal from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Because "the rulings of a non-Article III bankruptcy court should not be more insulated from appellate review than the rulings of an Article III district court," courts have applied "§ 1292(a)(1) by analogy [to] allow the appeal" to the district court of a "preliminary injunction" entered by a bankruptcy court. *In re Reserve Prod., Inc.*, 190 B.R. 287, 290 (E.D. Tex. 1995).

The bankruptcy court's injunctive order is therefore appealable for the same reasons a district court's injunctive order would be appealable. As courts have recognized, "parties have a right to appeal a district court order issuing a preliminary injunction, [and] there is no reason a district court, sitting as an appellate court, should not hear an appeal of the same order from a bankruptcy court." *In re Roussos*, No. 2:15-AP-01406-ER, 2016 WL 3545747, at *6 (C.D. Cal.

June 27, 2016), *appeal dismissed as moot*, No. 16-56065, 2017 WL 3224661 (9th Cir. Jan. 4, 2017).  Accordingly, this Court, "sitting as an appellate court, [is] authorized to hear th[is] appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. § 1292(a)."  *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 282 n.16 (3d Cir. 2002).

This Court also has appellate jurisdiction because the bankruptcy court's order is final.  The Bankruptcy Code grants this Court authority to review "final judgments, orders, and decrees" of the bankruptcy court.  *See* 28 U.S.C. § 158(a)(1).  Courts in this Circuit construe finality under section 158 "more liberally or flexibly than 'finality' under § 1291."  *In re ASARCO, LLC*, 650 F.3d 593, 599 (5th Cir. 2011) (finality is view "in a practice, less technical light" (quoting *In re Kizzee-Jordan*, 626 F.3d 239, 242 (5th Cir. 2010)).  "There is . . . a lower threshold for meeting the 'final judgments, orders, and decrees' appealability standard under 28 U.S.C. § 158(a) than there is for the textually similar 'final decisions' appealability standard under 28 U.S.C. § 1291."  *In re Orr*, 180 F.3d 656, 659 (5th Cir. 1999).  Accordingly, "an appealed bankruptcy order will be considered final if it constitutes . . . a final disposition of a discrete dispute within the larger bankruptcy case."  *Id.* at 600.

It is well settled that when a "bankruptcy court issues a 'preliminary' injunction, but contemplates no further hearings on the merits of the injunction, apart from the outcome of the reorganization, the injunction is a final, appealable order."  *In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 778 (S.D.N.Y. 1992); *see also In re Excel Innovations, Inc.*, 502 F.3d 1086, 1092 (9th Cir. 2007) ("although the parties and the bankruptcy court labeled the injunction 'preliminary,' nothing in the record indicates that the bankruptcy court contemplated further proceedings on the injunction").  In that sense, it "'resolves a proceeding within the bankruptcy that would be a freestanding lawsuit if there were no bankruptcy action,'" *In re Royce Homes LP*, 466 B.R. 81, 88 (S.D. Tex. 2012) (quoting *In re McKinney*, 610 F.3d 399, 402 (7th Cir. 2010)), and is

therefore final and appealable.

Here, there is no indication in the record that the bankruptcy court intends to revisit its injunction. The bankruptcy court enjoined "any action in furtherance of any Optional Redemption," and the injunction does not expire until "confirmation of any plan of reorganization or conversion of the Bankruptcy Case." Dkt. 18-03212-sgj, ECF 21, Exhibit 3, APP. 00027-00028. Furthermore, the bankruptcy court stated that "The Optional Redemption would eliminate any chance of confirmation of a plan of reorganization based on the Oaktree Transaction, or a similar plan," demonstrating its intent that it would not revisit the injunction prior to confirmation. In addition, the Chapter 11 Trustee testified at the July 6 hearing that he intends to confirm his proposed plan in August 2018. He testified further that the purpose of his request for injunctive relief is to get to a confirmation hearing, and that the plan is likely to be confirmed if injunctive relief is granted. Significantly, pursuant to the terms of the Oaktree proposal, the plan must be approved by August 24, 2018.

In light of the Chapter 11 Trustee's plans and the bankruptcy court's statements, it is highly unlikely that "there will be further hearings on the merits of the injunction, apart from the outcome of the reorganization." *In re Ionosphere Clubs, Inc.*, 139 B.R. at 778. Accordingly, the bankruptcy court's orders are final, appealable orders.

**B.     The Break-Up Fee Order Is An Appealable Final Order.**

The bankruptcy court's order granting Oaktree a $2.5 million break-up fee and expense reimbursement is also an appealable final order under 28 U.S.C. § 158(a). As discussed above, the Fifth Circuit views finality in the bankruptcy setting "in a practical, less technical light." *ASARCO*, 650 F.3d at 599–600. To that end, in *In re ASARCO, L.L.C.*, the Fifth Circuit held that an order allowing qualified bidders in a bankruptcy sale to be reimbursed for their legal expenses in conducting due diligence qualified as an appealable final order. *Id.* at 598–99. The Fifth

Circuit explained that the reimbursement order "settled the contested matter of whether ASARCO was permitted, in the exercise of its business judgment, to reimburse potential bidders of due diligence expenses related to the proposed sale." *Id*. at 600. Because it settled a "'discrete dispute,' the Reimbursement Order was sufficiently separable from the rest of the bankruptcy proceeding to be appealable as a 'final' order under § 158(a) and (d)." *Id*.

*In re ASARCO* is on point and controlling. Whether Oaktree should be entitled to a $2.5 million break-up fee and an additional uncapped expense reimbursement, regardless of whether the underlying transaction is legally permissible, is a discrete dispute within the larger bankruptcy. The bankruptcy court's order has "settle[d] the . . . matter" of Oaktree's entitlement to these deal protections." *Id*. at 600. Moreover, the order appoints Oaktree as the CLOs' new sub-servicer and sub-adviser. There are no future contingencies on which the break-up fee and expense reimbursement depend.

## II.     If The Bankruptcy Court's Orders Are Not Immediately Appealable, This Court Should Certify Them For Interlocutory Appeal.

Even if the bankruptcy court's orders were not appealable as a matter of right, this Court would have discretion to consider this appeal on an interlocutory basis. This Court has the authority to grant permissive appeals from non-final bankruptcy orders under 28 U.S.C. § 158(a)(3). Section 158(a)(3) "does not provide a standard by which to determine whether leave should be granted, but 'the vast majority of district courts faced with the problem [of having no articulated standard] have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders." *Chambers v. First United Bank & Tr. Co.*, No. 4:08-MC-007, 2008 WL 5141264, at *1 (E.D. Tex. Dec. 5, 2008) (quoting *Ichinose*, 946 F.2d at 1177). The section 1292(b) standard has three elements: "(1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the

litigation." *Id.*

While section 1292(b) may guide the exercise of this Court's discretion, it does not cabin it.  *See, e.g., In re Treasure Isles HC, INc.*, 462 B.R. 645, 647 (6th Cir. BAP 2011) (district court's discretion to grant leave to appeal is "guided and instructed, but not constrained, by" § 1292(b) standards); *In re Moix-McNutt*, 215 B.R. 405, 408 n.6 (8th Cir. BAP 1997); *see also Ichinose*, 946 F.2d at 1177 ("We have not previously considered whether it is proper for a district court to adopt the § 1292(b) standard for § 158(a) purposes, and we do not do so here.").  The decision whether to grant leave to appeal is ultimately "committed to the district court's discretion."  *In re O'Connor*, 258 F.3d 392, 399–400 (5th Cir. 2001).

Here, an interlocutory appeal is appropriate because the bankruptcy court's orders are based on the faulty premise that the Chapter 11 Trustee can transfer the HCLOF's Equity Notes to Oaktree under a plan of reorganization without HCLOF's consent.  Not only is that assumption false as a matter of law, but it also means that the bankruptcy court has exceeded its lawful jurisdiction.  S*ee TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 525 (5th Cir. 2014) (bankruptcy court did not have in rem jurisdiction over assets that were not "property of the estate"); *Scott v. Bierman*, 429 F. App'x. 225, 231 (4th Cir. 2011) ("[A] bankruptcy court's jurisdiction does not extend to property not part of a debtor's estate."); *NovaCare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)*, 267 B.R. 46, 59 (Bankr. D. Del. 2001) (same); *In re Funneman*, 155 B.R. 197, 199-200 (Bankr. S.D. Ill. 1993) (partnership property was not property of the debtor-partner's estate and, therefore, outside the court's subject matter jurisdiction).

The Chapter 11 Trustee does not own the notes issued by the CLOs — and certainly not the Equity Notes owned by HCLOF, and all parties (the Chapter 11 Trustee, Oaktree, and the CLOs themselves) concede this point — as they must.  2018-07-06 Hr'g Tr. 54:10–12, 119:12–

14, 274:15–21, Exhibit 13, APP. 001307, APP. 001372, APP. 001500. Acis LP is merely the portfolio manager of the CLOs and does not have any property rights in any of the foregoing. As the D.C. Circuit has recently explained, a CLO manager does not "possess[] or own[] the assets [a CLO] is securitizing":

> CLO managers do not hold the securitized loans at any point. . . . CLO managers neither originate the loans nor hold them as assets at any point. Rather, like mutual fund or other asset managers, CLO managers only give directions to a[] S[pecial] P[urpose] V[ehicle] and receive compensation and management fees contingent on the performances of the asset pool over time.

*Loan Syndications and Trading Ass'n v. SEC*, 882 F.3d 220, 223 (D.C. Cir. 2018).

Nor is it the case that the Chapter 11 Trustee, through operation of the Bankruptcy Code, now owns or has the ability to effect a transfer of the Equity Notes. It is black-letter law that the debtor-in-possession or the bankruptcy trustee steps in to the debtor's shoes, and has no greater rights than the debtor had on the date that bankruptcy commenced. *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 748 (3d Cir. 2013) ("It is a given that the trustee or debtor-in-possession can assert no greater rights than the debtor himself had on the date the bankruptcy case was commenced." (internal alterations omitted)); *In re Gibralter Res., Inc.*, 197 B.R. 246, 253 (Bankr. N.D. Tex. 1996) ("the general rule is that the trustee has no greater rights than the debtor and stands in the shoes of the debtor"); *In re Brooks*, 60 B.R. 155, 160 (Bankr. N.D. Tex. 1986) ("Of course, a bankruptcy can acquire no greater rights in property than the debtor possessed." (citation omitted)).

Acis LP — and by extension, the Chapter 11 Trustee — may not take actions related to the CLOs unless specifically permitted to do so by the relevant PMAs. *See, e.g.*, 2013-1 PMA § 2 (limiting portfolio manager's role to "the investment advisory and related service described below")., ECF 319-7, Exhibit 5, APP. 000111. Neither the PMAs nor the Indentures empower the Chapter 11 Trustee to sell, or offer for sale, the Equity Notes owned by HCLOF. *Cf., e.g., id.*

§ 3(e)–(g) (allowing portfolio manager to sell the collateral loans owned by the CLO), APP. 000113-000114.

The bankruptcy court's orders and opinions fail to address these essential issues. Instead, the bankruptcy court has suggested that the Chapter 11 Trustee may have a theory — one that even the bankruptcy court acknowledges is "not at all clear cut," ECF 390, Exhibit 1, APP. 00005— that has never before been applied or adopted or even suggested previously, for seeking approval of a nonconsensual transfer of non-estate property. No party involved in the case has ever pointed to an instance in which such an event has occurred, or even been attempted, and much less approved. There is no precedent supporting such a result. Nor is there any law or contract that permits the Chapter 11 Trustee to effect such a scheme in violation of the fiduciary duties owed by Acis LP to the CLOs and their investors.

Nor can the bankruptcy court overcome the undisputed fact that the Equity Notes are not property of the bankruptcy estates by pre-judging the merits of, but not actually ruling on, the Chapter 11 Trustee's claim that certain interests in HCLOF or agreements with HCLOF were fraudulently transferred before the filing of the bankruptcy cases. The court's reliance on alleged fraudulent transfer claims highlights three clear errors. *First*, even if HCLOF is improperly exercising contractual rights that at one time belonged to Acis LP, those rights never included the power to compel a sale of the Equity Notes. What the Chapter 11 Trustee claims to have been fraudulently transferred is an alleged contractual right to call (or not to call) a redemption; he does not claim that the Equity Notes were fraudulently transferred. And, in any event, as portfolio manager, Acis LP has always had the obligation to act in the interests of the owners of the Equity Notes and not in its own interests. *Second*, until there is a judgment on the pending fraudulent transfer claims, any alleged fraudulently transferred contract rights are not property of the estate. *See In re Teligent, Inc.*, 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004) ("[f]raudulently

transferred property does not, however, become property of the estate until *after* it has been recovered" (emphasis in original)). *Third*, the very fact of these pending fraudulent transfer claims establishes that there is (and that the Chapter 11 Trustee is pursing) an adequate remedy at law. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 491 B.R. 27, 39 (S.D.N.Y. 2013), *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014) ("Since the Trustee would be able to recover any property deemed to be property of the estate in the fraudulent transfer action, the Trustee has failed to demonstrate . . . that the Madoff Securities estate would suffer irreparable harm under the traditional test for an injunction . . . ."). If the alleged bad deeds occurred, there is a fully adequate legal remedy and an injunction is not warranted. There is no reason to turn property rights and securities laws on their head just to follow a path (the forced sale of non-debtor property) that the Chapter 11 Trustee believes might be more convenient.

Other elements of the bankruptcy court's orders are based on the incorrect legal conclusion that HCLOF is not permitted, as of right, to exercise rights granted to it to effect a redemption of its Equity Notes under the Indentures, as allowed under 11 U.S.C. § 555. The Court further erred in concluding that HCLOF's exercise of its rights would violate either 11 U.S.C. §§ 362(a)(3) or 363(b). Neither section applies because HCLOF seeks only to exercise rights with respect to its own property (its Equity Notes) — not property of the estate. The mere fact that HCLOF may take actions with respect to its property — the exercise of certain redemption rights under the Equity Notes it owns — that may have an indirect effect on estate property does not constitute acts to "exercise control over" or "obtain possession of" estate property for purposes of section 362(a)(3).

The Chapter 11 Trustee's ultra vires actions, which have been countenanced by the bankruptcy court through its July 10 orders, are an egregious violation of basic principles of law

and raise grave constitutional concerns. This Court should reverse.

Respectfully submitted,

/s/ Mark M. Maloney
Mark M. Maloney
Georgia Bar No. 468104 (*pro hac vice*)
W. Austin Jowers
Georgia Bar No. 405482 (*pro hac vice*)
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309
Tel: 404.572.4600
Fax: 404.572.5100
mmaloney@kslaw.com
ajowers@kslaw.com

Paul R. Bessette
Texas Bar No. 02263050
500 West 2nd St., Suite 1800
Austin, Texas 78701-4684
Tel: 512.457.2000
Fax: 512.457.2100
pbessette@kslaw.com

**Counsel for:**
**Highland CLO Funding Ltd.**

/s/ Holland N. O'Neil
Holland N. O'Neil
Texas Bar No. 14864700
Jason B. Binford
Texas Bar No. 24045499
Melina N. Bales
Texas Bar No. 24106851
Foley Gardere
Feoly & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
honeil@foley.com

Michael K. Hurst
Texas Bar No. 10316310
Ben A. Barnes
Texas Bar No. 24092085
Lynn Pinker Cox & Hurst LLP
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Tel: 214.981.3800
Fax: 214.981.3839
mhurst@lynnllp.com

**Counsel for:**
**Highland Capital Management LP**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served electronically by the Court's ECF system on July 11, 2018, on all parties entitled to notice in the respective cause herein.

*/s/ Holland N. O'Neil*
Holland N. O'Neil